Statement.

# Wytheville.

## PETERS v. LYNCHBURG LIGHT AND TRACTION COMPANY.

### June 11, 1908.

1. ELECTRICITY—*Incandescent Lamp—Shock—Negligence.*—A person injured by a shock while turning off an incandescent electric lamp cannot recover from the company which furnishes the current of electricity where it appears that he owned, installed and controlled the electric outfit, and there is no evidence of an excessive voltage or other negligence on the part of the company. Negligence of the company under such circumstances will not be presumed.

2. NEGLIGENCE—*Res Ipsa Loquitur—When Doctrine Not Applicable.*— Where a thing is under the management of the defendant or his servants, and an occurrence is such as, in the ordinary course of things, does not happen if proper care is used, it will be presumed, in the absence of explanation by the defendant, that the occurrence arose from want of care. But the doctrine of *res ipsa loquitur* has no application where an accident is due to a defective appliance under the management of the plaintiff; nor to a case involving divided responsibility, where an unexplained accident may have been attributable to one of several causes for some of which the defendant is not responsible.

Error to a judgment of the Corporation Court of the city of Lynchburg in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Don P. Halsey,* for the plaintiff in error.

*Horsley, Kemp & Easley,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The declaration in this case, after first setting forth that the defendant is an electric light company located in the city of Lynchburg and engaged in the business of supplying electricity to the citizens of that city for lighting purposes, alleges: (1) That the defendant negligently suffered an excessive current of electricity to remain upon its wires leading into the plaintiff's dwelling; (2) that it negligently permitted its secondary wire, used for conducting electricity into the building, to become crossed with its other wires, thus carrying a dangerous voltage of electricity therein; and (3) that it negligently failed to keep in proper condition a suitable transformer to reduce the voltage of electricity carried by its primary or high tension wires, so as to transmit a safe current to its secondary or low tension wires leading into the dwelling. And, as the proximate result of these several acts of negligence, it is charged that the plaintiff, in turning off an incandescent light in his kitchen, received a shock from the overcharged wire, which occasioned the injury for which he demands damages of the defendant.

The trial court entered judgment for the defendant on a demurrer to the evidence, to which ruling the plaintiff brings error.

The defendant had neither ownership nor control of the electric appliances on the plaintiff's premises. The house was wired by the owner, under the inspection of the city electrician, and the wiring and electric equipment were his property. The two experts, who examined the premises to discover the cause of the accident, are agreed that excessive voltage could only have been transmitted into the building by one of two means: Either by the transformer being out of order, or by a crossing of the secondary wire with some other wire of higher voltage; neither of which conditions was found to exist. On the contrary, the testimony of both these experts (one introduced by the plaintiff and the other by the defendant) shows that, in their opinion, the accident was due to the circumstance that the brass on the light bulb protruded from the socket in such a way that, when the light was on, the upper end of the brass

was in contact with the wires in the socket. Their theory is sustained by the incident, that one of them (Kent, the plaintiff's witness), while holding the bulb in his hands, with part of his hand touching the protruding rim on top of the lamp, stepped on a piece of zinc under a range connected with the water tank and pipes running into the ground; and the short circuit thus formed caused the electricity to pass through his body into the ground. The shock was shown to be so severe that it burnt his finger, and he jerked loose and threw the lamp from him. In that connection it also appeared that the plaintiff himself had taken the light bulb in question from another room and placed it in the kitchen socket, to which it was unsuited.

To sustain a recovery, the plaintiff relies chiefly on the doctrine of *res ipsa loquitur;* and calls special attention to the case of *Alexander* v. *Nenticoke Light Co.,* 209 Pa. 571, 58 Atl. 1068, 67 L. R. A. 475, 17 Am. Neg. Rep. 354. There is, however, obvious dissimilarity in the facts of the two cases. In the outset, the opinion in the Pennsylvania case states: "The premises of the appellant * * * were lighted by electricity. The electric light was furnished by the appellee, an electric light company. It had wired the store and cellar of the plaintiff, furnished the electric lamps, and made and maintained the connections * * * He went into his cellar to show goods to a customer, and while handling, in the usual way, an ordinary incandescent light bulb, suspended from the ceiling by a flexible extension cord, was severely shocked and seriously injured. From the facts submitted, it appeared that when he was shocked the electric wires on his premises were charged with a higher voltage than they should have carried, but the cause of this was not shown to have been any specific negligence of the defendant." The court held, upon the foregoing premises, that the presumption was that the company was negligent.

The differentiating features between the Pennsylvania case and the case in judgment are, the presence in the former case,

and absence in the latter, of excessive voltage on the lighting wires; and the further fact, that in the former case the light company wired the plaintiff's store and cellar, furnished the electric lamps, and made and maintained the connections; while, in this case, the wiring was done, and the electric outfit was owned, installed and controlled, by the proprietor of the premises.

In the case of *Scott* v. *London &c. Docks Co.,* 3 H. & C. (Com. L. R. U. S. 134), Erle, C. J., with respect to the application of the doctrine of *res ipsa loquitur,* observes: "There must be some evidence of negligence. But when the thing is shown to be under the management of the defendant or his servants, and the occurrence is such that, as in the ordinary course of things does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the occurrence arose from want of care."

The doctrine rests upon the assumption that the *thing* which causes the injury is under the exclusive management of the defendant, and the evidence of the true cause of the accident is accessible to the defendant and inaccessible to the person injured. *Ross* v. *Double Shoals Cotton Mill,* 140 N. C. 115, 52 N. E. 121, 1 L. R. A. N. S. 298; Wigmore on Ev., sec. 2509; 1 Shear. & Red. on Neg., sec. 59.

The decisions of this court accord with the foregoing principles.

In *Richmond &c. Co.* v. *Rubin,* 102 Va. 809, 47 S. E. 834, the company suffered its trolley wire to sag and come in contact with the plaintiff's 'phone wire, and was held responsible for a fire traceable to that cause.

So, in *Norfolk R. &c. Co.* v. *Spratley,* 103 Va. 379, 49 S. E. 502, and *Lynchburg Tel. Co.* v. *Booker,* 103 Va. 594, 50 S. E. 148, the injuries, for the infliction of which the companies were held answerable in damages, were occasioned by broken wires

owned and exclusively controlled by the defendants, and negligently left by them in or near the streets.

But the doctrine of *res ipsa loquitur* can have no application where the accident is due to a defective appliance under the management of the plaintiff; nor to a case involving divided responsibility, where an unexplained accident may have been attributable to one of several causes, for some of which the defendant is not responsible.

From the standpoint of a demurrer to the evidence, the plaintiff has failed to establish actionable negligence against the defendant, and the judgment of the trial court, which so holds, must be affirmed.

*Affirmed.*