# CHARLESTON.

BLANCHE LAURENT *v.* UNITED FUEL GAS COMPANY.

(No. 5633.)

Submitted April 21, 1926.    Decided April 27, 1926.

1. NEGLIGENCE—*Doctrine of Res Ipsa Loquitur Cannot be Invoked, if Defendant Does Not Have Control of Premises or Operations, or Where There is Divided Responsibility.*

    The doctrine of *res ipsa loquitur* cannot be invoked if defendant does not have control or management of the premises or operations where the accident occurred; or where there is divided responsibility, and the unexplained accident may have been the result of causes over which defendant had no control. (p. 511.)

    (Gas, 28 C. J. § 69; Negligence, 29 Cyc. p. 592.)

2. GAS—*That Gas Company's Servants Were in Vicinity, Attempting to Cut Off Gas From Adjoining Building When Explosion Occurred, and May Have Turned Gas Into Service Pipe, Held Insufficient to Sustain Recovery.*

    In an action for personal injuries resulting from a gas explosion in a building supplied with gas by defendant, the mere fact that defendant's servants were in the near vicinity attempting to cut the gas off from an adjoining building when the explosion occurred and may have turned gas into a service pipe pointing in the direction of the adjoining building, is not sufficient upon which to base a verdict and judgment in favor of plaintiff, unless it be shown by evidence creating more than an assumption or inference that the gas, if so turned on, was the cause of the explosion.    (p. 512.)

    (Gas, 28 C. J. § 71.)

3. SAME—*Person Injured by Gas Explosion Must Show Negligence of Defendant as Cause of Injury by Evidence Sufficient to Establish Rational Conclusion of Liability.*

    In such case the burden rests upon plaintiff to show negligence on the part of defendant which caused the injury, by evidence or a state of facts sufficient to establish a rational conclusion of liability.    Until that is done, the defendant is not called upon to prove it was not negligent, or that the explosion was the result of a cause over which it had no control. (p. 513.)

    (Gas, 28 C. J. § 68.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by Blánche Laurent against the United Fuel Gas Company for personal injuries. Judgment for plaintiff, and defendant brings error.

*Reversed; judgment entered for defendant.*

*Harold A. Ritz, J. M. Woods,* and *Price, Smith & Spilman,* for plaintiff in error.

*Townsend & Bock, Payne, Minor & Bouchelle,* and *Ben Moore,* for defendant in error.

LIVELY, JUDGE:

On a demurrer to the evidence the trial court held in favor of plaintiff below, Blanche Laurent; a jury assessed her damages at $1,700., and judgment thereon was rendered, from which defendant below, the Gas Company, prosecutes this writ.

Plaintiff, an employee in the millinery store of Laura Lewis, at No. 223 Hale Street, Charleston, was injured by a gas explosion about 9 o'clock A. M., Dec. 1, 1924. Her ankle was sprained and her nervous system shocked. The morning was cold. Plaintiff came to the store about 8:30 and lit the gas in the stove in the front part and also the gas in a stove in the rear room. A partition without door separated the front part of the room from the back part. A little later, Francine Delforge, another employee, arrived, and a short time before the explosion, another employee, Mrs. Rule, came, and on entering the front room remarked that she smelled gas; she then opened the door to the stairway where the meters were and found the smell of gas strong. She walked back and was standing near the aperture in the partition between the rooms; plaintiff and Delforge were sitting near the stove in the back room, when the explosion occurred, first in the apartment immediately overhead on the second floor occupied by Spaulding and wife, and followed by another explosion, or possibly a continuation of the first, in the millinery store, throwing Mrs. Rule down, injuring her wrist, and causing the injuries to plaintiff. The stove by which plaintiff was

sitting was turned over, but was still burning after the explosion and was turned out by Mrs. Rule.

The storeroom was in what is called the Solof Building, a two-story building with two storerooms on the ground floor, the southern one being occupied by an electric company; the northern storeroom, No. 223, by Laura Lewis; which building was formerly a brick dwelling house remodeled by Solof, with two living apartments on the second floor, the one over the electrical company being occupied by Fry, and the other over the millinery store being occupied by the Spauldings, as stated.

Adjoining the Solof Building on the north was another two-story brick building owned by Gus Loth and rented by a film exchange company which desired a meter set in its room on the first floor, and had applied to the Gas Company therefor. Short, defendant's employee, went to the film exchange room for that purpose on Nov. 29, and found that in the rear of the room on the first floor a meter had been once set but later removed. The film exchange desired the new meter set at another place farther away from its inflammable films. Short found upon examination of the pipe from which the former meter had been disconnected, that the gas was turned on, and it being necessary to have the gas off while in the process of connecting the meter and it not being within his authority and duty to turn off gas from a building, he made the proper report and request to the Gas Company, which, on the following Monday morning, the day of the explosion, sent three of its employees, Harris, Young and Rood to locate the curb box controlling the gas in the Loth building. Short had on Saturday observed two curb boxes in front of the Loth building four or five feet apart, one of which had a lid on it marked ''gas''; the other without lid and filled up with dirt and filth. He unscrewed the lid marked ''gas'' and by looking into it he saw that the gas was turned off, and he knew that the film exchange room was not supplied from that pipe. He had a key by which gas could be turned on or off, but did not use it. He then screwed the top back on. He made no inspection of the box from which the lid was gone and which was partially filled with dirt. Harris, Young and

Rood arrived early and tried to locate the curb box controlling the gas to the film exchange. They noticed the box with the cap off, and Young ran his key down into the dirt and remarked, "if I am on the stop this gas is absolutely off." They "fooled" around waiting for the film people to come and open their storeroom; went into the Gazette office next door and waited. When the film man came and opened up, Harris went in and discovered, as Short had discovered, that the gas was in the pipes to which the meter was to be connected. They went to the alley in the rear, knowing that there was a gas main there, and dug a trench between the concrete in the alley and the Loth building, but could not find a service line. They then went back to Hale Street in front of the building and told the film exchange man that they would have to get permission to break the sidewalk. Young went up-stairs to find out whose gas was turned off, their examination having shown that the gas was turned off at the front. They made no examination of the box marked "gas". Green, a cook in the employ of Fry (who occupied the apartment over the electrical company store south of Mrs. Lewis), said that one of the men came up while he was cooking Fry's breakfast and asked if his gas was burning, and later came back and asked him how his "gas was now," and upon being asked by Green, "What was the matter?" replied, "I am mixed up in the place, there are two or three places down there." Harris thinking probably that the water company had enclosed the box controlling the gas in its curb box was bending over looking into the water company's box when the explosion occurred. Rood was near him, and Young was standing about twenty feet away with witness Coffey, the plumber who had arrived to set the meter in the film exchange. Bennett, a witness for plaintiff, who was on the scene two or three seconds after the explosion, saw some one in overalls with a key which he thought was placed in an opening in the street with the cap removed, the opening near the line between Solof and Loth farthest north. A short time after the explosion, McMillan and Chenoweth, employees of defendant, came to the scene and immediately broke into the sidewalk and took up the stopcocks from both of the boxes. The south box marked "gas" had the top

screwed on. Five or six witnesses who inspected them say they were closed when dug up. The lug on one had been partially broken ("out of commission"). The cocks were preserved and introduced in evidence in the same condition in which they were dug up and disconnected from the pipes. The pipes were followed and removed to property line, but no farther. It was not determined which way or where these service lines thus disconnected went. The pipe line farthest north from the Lewis store, on which line the stopcock enclosed by the open box filled with dirt was attached, was tested by air pressure and developed no leaks. The other line nearer to the Lewis store to which was attached the stopcock, the box of which was closed with the cap marked "gas" was tested, and would not hold air. The stopcocks themselves were tested and did not leak. When these two boxes were dug up, one had the top screwed on (the closed one), and the other (with the dirt in it) was unclosed. It will be observed that the line reached by the open box with the dirt in it did not leak. This was the one farthest north from the Lewis store where plaintiff was hurt; the other line nearest the Lewis store (both in front of film exchange) did leak when tested. No one knew where these service lines extended. The Gas Company keeps no record of where the service lines go, it generally furnishing gas to the property line at the curb. According to witness Harris, who was the foreman with Young and Rood, they did not touch the stopcock in the closed box (connected with the defective service line). Young was not a witness; he had left the service of the Company and had probably gone to the army; his whereabouts was unknown at the time of the trial. Rood was a pick and shovel man and had very little recollection of what occurred, except that he was there and did some digging and was bringing a pickaxe to Harris who was looking into the water-boxes in the curb, at the time of the explosion.

What caused the explosion? To whose negligence was it due? The plaintiff's theory is that defendant negligently permitted an old unused gas pipe connected with its main on Hale Street to extend beyond the street curb in front of the building adjoining the Lewis store on the north, to continue and remain with the end thereof open and exposed and which

contained leaks, improper fittings, appliances and connections, although other sufficient gas pipe connections were then in use for the purpose of supplying gas to the Lewis store from the main; and negligently permitted an opening to remain in the sidewalk in front of the Lewis store, extending to the old unused gas pipe with connection therewith for turning on and off the gas from the main to said old unused pipe; and that defendant on the day of the explosion carelessly and recklessly turned on the gas from the main into this old unused pipe, which flowed through it and accumulated in the basement under the Lewis store, and coming into contact with a light, caused the explosion.

The second count is the same as the first count, except it alleges that the old unused pipe was closed at the end, but was weak and defective and was bursted by pressure of the gas turned into it, thus releasing the gas in the basement.

More concisely stated, plaintiff says that defendant carelessly and negligently permitted an old unused pipe to remain connected with its main near the Lewis store stopcock, which pipe was reached by a box negligently left uncovered; and that defendant negligently opened this stopcock, the gas passing through the old unused pipe, open at the end, or weak and defective, was discharged in the basement under the Lewis store where, by coming in contact with a light, it caused the explosion and resultant injury.

Plaintiff's counsel argue that the charge of negligence has been proven; that while Harris says no gas was turned into either of the pipes, and though at least five witnesses say the stopcocks were found closed upon being dug up immediately after the explosion, and the cap on the box to the south, leading down to the cock on the defective line, was screwed on at the time of the explosion, yet the circumstances warrant a reasonable inference that he was mistaken and in fact did turn on the gas in one or both of these lines. It is argued that because the explosion occurred at the time these employees were at work trying to find the stopcock which controlled the gas supply to the film exchange, they must have turned the gas on which caused it. They were trying to find out where these pipes led to which the two stopcocks were attached, by

inquiring of Fry's cook if his gas was on. These employees were seen engaged in the effort to locate the control to the film exchange with a key used for the purpose of turning on and off the gas, by various persons, including Hunter, an employee of the Gazette, Green the cook for Fry, and by Bennett a few moments after the explosion who saw one of them with an iron bar (key) which he thought was placed in the opening in the street with the cap removed, which opening he identified as the one farthest from the Lewis building and nearest Lee Street, on the north. It is pointed out that Young's evidence is not taken. His absence is accounted for, but it is argued that he may have turned the cocks, or one of them, although Harris says he did not, and Rood says he did not see any one do so. Thus plaintiff's counsel argue, basing the charge of negligence in turning gas into the old unused pipe, and on the circumstances and inferences which may be reasonably drawn therefrom.

Defendant relies on the positive evidence that the gas was not turned on, that the box over the cock controlling the defective line was closed with the cap screwed on, found to be so immediately after the explosion, and that the other cock which was in the open box partially filled with dirt, into which the key was inserted, controlled the gas in a line which was tested and from which gas could not escape; and that both cocks were found to be closed after the explosion and were tested and found tight.

There is another branch of the evidence which has not been touched upon, which has an important bearing. Although it is tedious to detail all of the evidence, it is necessary to do so because of the demurrer to the evidence, on which the case turns. All of defendant's evidence in conflict with plaintiff's evidence must be discarded; but only that which is in conflict; and hence the necessity of fully reviewing the entire evidence. No one knew where the pipes led to from the cocks, one or both of which plaintiff says defendant opened. What connection do these pipes have with the Solof Building in which the Lewis store was being conducted? If gas was turned into one or both of them how would it reach the Solof Building? As before stated, defendant traced these pipes to the property

line and went no farther. The southern line (from the covered box) after reaching the property line turned south toward the Solof Building. Plaintiff's counsel say it was the duty of defendant to have these lines dug up after the explosion, to ascertain their terminus and purpose and to have brought the result to the trial; while defendant says it has no right to dig on private property and has no control over the direction or terminus of service pipes, or the upkeep of plumbing in the houses. The burden is on plaintiff to not only show negligence on the part of defendant, but that such negligence resulted in the injury complained of. However, plaintiff did make some excavations and investigations, with the following result:

Lee, a plumber who put in new plumbing for gas when Solof remodelled the Solof Building about two years before the explosion, found an old rusted pipe one-inch in diameter entering the basement through the wall next to the Loth building (film exchange), which had rusted and broken off, a piece of the pipe which fitted the break was lying in the basement. At that time the storeroom and apartment above it were on one meter. New gas pipes were put in the building, the floor lowered so as to be on a level with the street, the service lines extended from the basement walls up, and two service lines made, with a meter on each located under the stairway in the Lewis store. He cut the gas off at the curb in front of the building, the gas then coming into the building in front of the door of the room occupied by the Lewis store. After the explosion Lee went back to the basement and had workmen to break through the wall next to the Loth building around the old pipe which entered the wall about four feet six inches from the front wall, and dig back into the Loth lot (no basement there) about three feet, and found that the pipe turned through a knuckle or joint, in the direction of Hale Street, the pipe at the knuckle joining a one and one-fourth-inch pipe. He made no further excavations. The basement walls were of rock, and he discovered no other pipe entering it. He found the old piece of pipe yet in the basement. Hon. B. S. Morgan, a witness for plaintiff, built the house in 1895, and owned it up to about six years before the

trial when he sold it to C. B. Graham. It was a brick double residence. A small gas main was laid on Hale Street, and Morgan got permission from Carr, the owner of the now Loth lot, to lay a service line from the curb into his (Carr's) lot a few feet north of the division line parallel to his lot and thence into the basement of his brick double dwelling-house. The service line was laid as indicated and the entire house served with gas through that line. Later a larger main was laid in Hale Street, and Morgan then had a new service pipe laid therefrom under his own sidewalk and into the basement through the wall facing Hale Street; the old line entering through the Carr lot on the north was then discontinued. Morgan never used it again, although he did not remove it. His gas supply came from the new large main, the small original main being insufficient to meet the increased demand for gas, caused by the street being rapidly populated. The line which plumber Lee found, and which he partly excavated, fits Morgan's description of the original service line laid by him. There is no evidence to show that this old original service line was ever connected with the new main, or what became of the old insufficient main, whether it was dug up or remains under Hale Street. Graham was not a witness.

Plaintiff bases her case of negligence on the assumption from the presence of the two stopcocks to two service lines from defendant's main, one line pointing toward the Solof Building, that these lines, or one of them, conveyed gas to the basement of the latter building, the pipe being open, or in such weakened condition, that the gas turned in by Harris or his companions readily found its way into the basement under the Lewis store.

The explosion first occurred in the Spaulding apartment over the Lewis store. Mrs. Lewis, on the previous Saturday night, had turned off the gas from her store. Neither Spaulding nor his wife were witnesses. What they did or what happened in that apartment that morning does not appear. Chenoweth went up there a short time after the explosion, but found Mrs. Spaulding in tears and nervous. He speaks of chemicals he noticed in their rear room, but did not enter their front room, and after attempting to engage Mrs. Spauld-

ing in conversation, retired. The force of the explosion blew out the windows in the front room on Hale Street, and the rear wall of the second story was damaged. Immediately following the explosion up-stairs in the Spaulding apartment, the explosion below which injured plaintiff, occurred. Plaintiff and Miss Delforge had been in the store for some time before the explosion, probably twenty minutes or more, with both stoves lighted. When Mrs. Rule came in about five minutes before the explosion, she discovered gas in the front room; she opened the door which enclosed the meters under the stairs and found a strong scent of gas; and as she came back and stood near the other two ladies seated in the rear room by the lighted stove, the two explosions occurred. Where that gas came from is a conjecture. It was evidently in greater volume up-stairs. If it came from the cellar, it had to pass the lighted fires in the store before getting to the Spaulding apartments, unless it passed up before Miss Laurent lighted them. As before remarked, it does not appear when the Spauldings lighted their gas, if at all, or what they did that morning prior to the explosion. The evidence of two other witnesses should be noted. Andrew Coffey was the plumber who was to set the meter in the film exchange, and when he arrived, he noticed three men there who told him they were trying to find the stop-box to the film exchange building. Young had the key in a box near the dividing line of the buildings, and said that was not it (the proper box), for the gas there was shut off and the arms of the key pointed up and down the street indicating the gas was cut off. Later two of the men were at the water-box twenty feet away, the other man, Young, standing on the sidewalk with witness, when the explosions came, one following the other. He speaks of the force of the first explosion, saying that an iron grating on the second floor was lying fifty or sixty feet from the rear of the building. Reed, who dug the cavity and removed the two stopcocks, said they were both closed when taken out, the one farthest toward Lee Street (on the line which stood the air test) had a broken lug; that a stranger wanted to try to open it, and he got a wrench and by means of that instrument was enabled to open it and close it. He tested the line on which

this stopcock was found and it was airtight at a pressure of fifteen pounds. The other line would not hold air, indicating that it had an open end. This completes a summary of the evidence on the point involved—negligence of defendant causing the explosion—stated at more than usual length, tediously detailed, because the case turns on whether plaintiff has carried the burden of proving actionable negligence, directly or by circumstances warranting that conclusion.

It will be observed that there is very little conflict in the evidence, and there is very little of defendant's evidence which we can discard. Plaintiff's witnesses say Harris and his two men were there that morning trying to find the box which controlled the gas service to the film exchange. Defendant's witnesses say the same thing. Harris says the covered box (the one on the defective line) was not touched by him or his men; their efforts were confined to the open box leading to the line which was not defective; and to digging in the rear on the alley, and investigation of the water company's box. No one says the contrary, but on that point plaintiff says defendant's evidence is unreliable because the explosion occurred while they were trying to locate the proper box and they must have turned the gas on into one of those old unused lines. And Young asked Fry's cook if his gas was on; and later asked him ''how it was now''? indicating that he had opened or shut off the gas somewhere. The stop cocks when detached were closed; no conflict on that point. The north line on which the cock with the defective lug was found, was found to be closed and airtight; this is not controverted. The line nearer to it on the south was not airtight, denoting that the end was open or the pipe defective, and that may be regarded as a proven fact; nothing indicating the contrary. That there was an old unused open defective pipe entering the Lewis basement from under the film exchange, thence turning toward Hale Street where these stopcocks were located, is uncontradicted; but plaintiff's evidence through Morgan, her witness, shows that this pipe was connected with an old main in Hale Street abandoned many years ago. Nothing connects this pipe with the present main, except that it pointed in that direction. All agree that the first explosion was in Spaulding's apartment.

Under plaintiff's declaration and her evidence to support it she bases her charge of negligence on the fact that defendant's servants negligently turned the gas into an old unused pipe connected with its main in Hale Street near the sidewalk, which pipe led to the basement of the Lewis store where it discharged the gas through either an open end or from defects in the pipe, where it became ignited, causing the explosion which injured her. It may be conceded that if the evidence, or the inferences which may be reasonably deducted therefrom, sustain that charge, the judgment cannot be disturbed. While there is no positive evidence that defendant's employees did turn the gas into the pipes which were shown to be connected with the main and running toward the firm exchange building, her counsel says that the circumstances overcome the positive evidence that they did not do so, and the positive evidence of many witnesses that the stopcocks were securely closed when dug up. The circumstances relied upon are that they were seen with the key in at least one of the boxes, and the explosion occurred while they were there, attempting to find the cut-off to the exchange building. Assuming that these servants did turn the gas on, the fact that it reached the basement of the Lewis store is predicated on the presence of an inch pipe which entered the basement through the stone wall on the side next to the film exchange, thought to be a gas pipe, which was open and which extended into the adjoining lot and then turned at a knuckle and ran in the direction of the two stopcocks dug up. It is argued that it may reasonably be inferred that the gas reached the basement through this pipe, because of its presence there. It entered the basement, was open, and was pointed in the right direction. However, plaintiff's witness Morgan accounts for the presence of this pipe and says it was originally connected with a main which was afterwards abandoned; and after the new main was laid gas came from it to the basement of his house, through another service pipe laid by him on his own lot, and that the old pipe entering the north side of the basement was abandoned and never used. He did not know whether the old line had been connected with the new main. If it was so connected, he did not have it done.

Plaintiff says the burden of showing whether this old un-used pipe line was connected with the present main, was shifted to defendant, under the doctrine of *res ipsa loquitur;* and it is pointed out that defendant having in its power the production of evidence negativing the presumption that the old unused line into the basement was connected with its present main, and failing to do so, the circuit court was right in holding that plaintiff's evidence was sufficient to establish the negligence charged. That there was an explosion, while defendant's servants were near the scene engaged in work that might or might not have caused it, does not make the Gas Company liable, nor raise the presumption of negligence against it. *Schaum* v. *Equitable Gaslight Co.,* 15 App. Div. 74, 44 N. Y. Supp. 284, 2 Am. Neg. Repts 204; *Hammer-schmidt* v. *Municipal Gas Co.,* 99 N. Y. Supp. 890; *Greed* v. *Manufacturers' Light & Heat Co.,* 238 Pa. 248; *Nomath Hotel Co.* v. *Kansas City Gas Co.,* 204 Mo. App. 214, 223 S. W. 975; *Washington Gaslight Co.* v. *Eckloff,* 4 App. D. C. 174. The doctrine of *res ipsa loquitur* is not generally applicable to gas explosions on premises which are not within the sole operation and control of the gas company transmitting gas thereto. Such explosions are of common occurrence, and are not always chargeable to the negligence of the gas company. Other independent agencies may · be responsible, and often are. Familiar instances are where gas has escaped from de-fective plumbing under control of the occupant of the dwell-ing; or where gas has accumulated in a defective cooking range.

Where the plant or operation is under management of a defendant and the accident would not likely happen in the usual and ordinary course if he had used proper care in the conduct of the business, a prima facie case of negligence is made against defendant. "The thing speaks for itself." And in such case defendant is called upon to rebut the prima facie showing by evidence of due care. The doctrine is well stated in *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661, and in *Jones* v. *Bridge Co.,* 70 W. Va. 374, approved and followed in *Jankey* v. *Gas Co.,* 98 W. Va. 412. In the *Jones* case, just cited, there is a quotation from *Wood* v. *Railway Co.,* 64 Atl.

246, which reads: "Where an accident itself, with all its surroundings, speaks in such way and is of such character as to show negligence on. the part of the defendant, the doctrine *res ipsa loquitur* applies and the plaintiff is allowed to recover in the absence of other proof." In the *Jones* case, plaintiff, a workman in the basement of a building, was injured by the fall of a board from the fourth floor, where defendant's servants were at work in laying a steel girder. The fall of the board, which was under the exclusive control of defendant, made a case of prima facie negligence of want of due care, on the part of defendant. The thing spoke for itself and called for satisfactory explanation and exculpation from defendant. In the *Jankey* case cited, the explosion occurred in the plant of defendant under its exclusive operation and control, from some defect in the plant or its operation and would not have occurred in the ordinary course had proper care been observed; *res ipsa loquitur* was applicable, and the prima facie case of negligence was not sufficiently rebutted by defendant's evidence. The distinction between these cases and the present case is that in the former, defendant was in exclusive control of the operations, while in the present case defendant was not in such control. It had not exclusive control over the plumbing or fixtures in the Solof Building, nor of the handling of the gas therein after it was furnished to the service pipe at the property line. *Helm* v. *Light & Heat Co.,* 86 W. Va. 628. The Spauldings and Mrs. Lewis each had control of their respective tenements and the handling of the gas therein. We are of the opinion that the doctrine of *res ipsa loquitur* does not apply to the instant case. See *Peters* v. *Lynchburg Traction Co.,* 108 Va. 333, where it is said the doctrine is applicable only where the thing is under the exclusive management of defendant.

Plaintiff contends that defendant should have introduced the Spauldings to show that negligence was imputable to them in the use of the gas in their apartments, in order to excuse itself from negligence. This contention is based on *res ipsa loquitur,* and is not tenable. Plaintiff proved that Mrs. Lewis turned her gas off on Saturday night, and was in no way responsible for the explosion. It is not perceived why the

Spauldings should not have also been examined by the plaintiff for the same purpose. The explosion occurred in their apartments, and they had the same control and were chargeable with the same duties in respect to the use of the gas as was Mrs. Lewis.

Whether defendant's employees did or did not turn the gas into the northern service line on which was attached the stopcock with the defective lug reached by the open box partially filled with dirt, we regard as immaterial, for it is shown by positive and uncontroverted evidence that this line would not permit the escape of gas. Neither court nor jury can disregard such positive evidence. *Wood* v. *Wyoming Co. Court,* 129 S. E. 747; *Jacobs* v. *R. R. Co.,* 68 W. Va. 618. If there was negligence imputable to these employees, it was in turning on the gas in the southern line reached by the box which had a metal top, and which line defendant says was open or defective. As before stated, there is positive evidence from Harris that neither he, Young, nor Rood opened this box; but plaintiff says they are not worthy of belief, and the circumstances contradict them. But plaintiff's evidence does not show that this line entered the Lewis basement, as charged in the declaration. The declaration says that the gas was negligently turned into a line which entered the basement, and that the box covering the stopcock on that line was left uncovered and exposed, (evidently referring to the northern box). This defective line pointed (at the curb) in that direction; but plaintiff through Morgan shows that the old unused line entering the basement connected with the abandoned main. There was nothing but a conjecture or inference that the defective line from the present main in any way reaches the Lewis basement. It is argued that it may have discharged gas near the basement, thence into it and eventually to the Spaulding apartment; but the declaration does not admit such evidence or inference. Recovery under the declaration could not be based on such evidence. Granting that gas was introduced into this line, it was incumbent upon plaintiff to show by competent evidence that this caused the explosion. Conjecture and inference will not suffice. There must be a causal connection reasonably proved. The explosion may have oc-

curred from an escape of gas in the Spaulding apartment, either from defective fixtures, or from their negligence. There was evidence of a sudden drop in temperature the night before the explosion, and it was said that often such changes in temperature cause leaks or breaks in the pipes by contraction from cold. These are mere conjectures pure and simple; but they are no more conjectural than the assumption that gas in the defective pipe found its way to the Spaulding apartments. It may be that the old unused pipe line entering the basement was in fact connected with the new main and did not reach the abandoned main; but under the evidence in this case strongly to the contrary, that assumption or inference is not sufficient legal basis for a verdict against defendant.

We are of opinion that the demurrer to the evidence should have been sustained. The judgment will be set aside and judgment entered here for defendant.

*Reversed; judgment for defendant.*