## Richmond

Leo E. Cloutier, Administrator c.t.a. of the Estate of Irma P. Cloutier, Deceased v. Virginia Gas Distribution Corporation.

April 24, 1961.

Record No. 5218.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Carter R. Allen* and *Wayt B. Timberlake, Jr.,* for the plaintiff in error.

*Thomas B. Gay* and *H. Merrill Pasco* (*C. E. Goodwin; Roderick D. Sinclair; Hunton, Williams, Gay, Powell and Gibson,* on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Leo E. Cloutier, Administrator c.t.a. of the Estate of Irma P. Cloutier, deceased, filed an action against Virginia Gas Distribution Corporation to recover damages for the alleged wrongful death of Irma P. Cloutier. A jury trial in the court below resulted in a verdict in favor of the plaintiff for $25,000.00. This verdict was set aside by the trial judge, on the motion of the defendant, on the grounds that the verdict was contrary to the law and the evidence and without evidence to support it.

The sole error assigned by plaintiff is to the trial court's action in setting aside the jury's verdict.

The defendant, as its name implies, is a gas distribution concern, furnishing natural gas to homes and businesses in certain areas of Virginia, including the City of Waynesboro, where the tragic incident that gave rise to plaintiff's cause of action occurred.

The basis of plaintiff's claim against defendant is that, on January 21, 1958, defendant negligently permitted gas to escape from its lines into the Cloutier home, causing an explosion and fire that destroyed the house and resulted in Mrs. Cloutier's death.

The Cloutier home, to which defendant had furnished natural gas for many years, was located at the southeast corner of Florence Avenue (running north and south) and DeWitt Street (running east and west) in the City of Waynesboro. It was occupied by the deceased, aged sixty-five, her husband and her son, who is the plaintiff administrator in this action.

The two-story dwelling faced on Florence Avenue and had a porch across its front. There was a concrete basement under the front two-thirds of the house in which was located a gas furnace, suspended from the first floor joists, and a gas hot water heater belonging to the Cloutiers, and a gas meter and regulator belonging

to the defendant. The living room of the home was immediately above the basement; Mr. and Mrs. Cloutier's bedroom was at the rear of the first floor and the son's bedroom was on the second floor.

In 1950, the defendant had installed a main for the distribution of its product along the south side of DeWitt Street. From this main the gas being furnished to the Cloutier residence passed through a three-fourths inch pipe (hereinafter referred to as the company service line) two or three feet in length, to a cut-off or curb cock located in a protective curb box on the Cloutier property line. The curb box was equipped with a vented cover, installed at ground level at the street end of a river rock and mortar driveway that extended some twelve to fourteen feet from the front porch of the house to DeWitt Street.

The curb cock and curb box and the line running thereto from the main were owned and maintained by the defendant.

From the curb box the gas passed through another three-fourths inch pipe (hereinafter referred to as owner's service line) under the river rock driveway to a point where the driveway ended at the corner of the house and the front porch. The service line then passed under the front porch, in loose soil, to a point near the southwest corner of the house. It then went out of the ground underneath the porch, and then through the basement wall to the interior of the basement, where it connected with defendant's meter and regulator. The gas then passed through another pipe and into the house lines supplying the gas appliances.

At a point at the northwest corner of the house, the owner's service line passed one or two inches above an outlet of a drain pipe leading from the basement and extending eighteen inches out from the foundation wall, under the surface of the ground.

The service lines from the curb box to the meter and regulator and from the meter and regulator to the owner's appliances were owned and maintained by the Cloutiers.

The gas furnished by the defendant had an artificial odorizing agent added to it to make it more easily detectable. Without this additive, the gas is odorless.

On the night of the explosion it was raining, although it had been cold for several days, and the ground was frozen. Leo Cloutier returned home from a meeting at nine o'clock. His father had retired, but his mother was watching television in the living room. Mrs. Cloutier asked her son to check on the furnace for an unusual noise

she had detected. He went to the basement, saw that the pilot light, which was at his eye level, was working properly, smelled no gas, and found nothing out of the way. He returned to the first floor, talked to his mother for ten or fifteen minutes, and retired to his bedroom. Twenty or thirty minutes later, at ten o'clock, the explosion and fire occurred. Leo Cloutier and his father managed to escape, but Mrs. Cloutier was not so fortunate. She burned to death, in spite of the efforts of two neighbors to rescue her.

The testimony concerning the source of the leaking gas came from a number of witnesses, some called by plaintiff and some called by defendant. This testimony shows that on May 8, 1957, during an annual testing procedure, two small leaks were found by defendant in its mains within five hundred feet of the Cloutier residence. These leaks were repaired by the installation of new sections of pipe, and thereafter additional tests showed no further leakage.

On the evening of the explosion, Frank Fuller, a witness called by the plaintiff, walked past the Cloutier residence at 5:35 o'clock and again at 6:45 o'clock. On both occasions he detected the strong odor of gas at the intersection of Florence Avenue and DeWitt Street.

Edward P. Berlin, Jr., another witness for the plaintiff, visited the scene immediately after the explosion and smelled a strong odor of gas. He saw defendant's employees digging in the vicinity of the street-end of the river rock driveway, and while the digging was in progress he heard a hissing noise.

John D. Miller, who testified for plaintiff, arrived on the scene immediately after the explosion and smelled a strong odor of gas, and while the digging was taking place saw an area of dry soil around the company's service line. Approximately one hour and a half after the explosion he saw a blue flame burning in the basement, under what had been the guest room of the dwelling, and when the ground was broken at the end of the river rock driveway, this flame went out.

Carl Riddlebarger, II, called by plaintiff, testified that when he visited the scene soon after the explosion he detected the strong odor of gas where the digging was being done at the end of the driveway.

Plaintiff called an expert witness, J. R. A. Hobson, Jr., who, when asked a hypothetical question, stated that there was a "logical possibility" that gas escaping in the vicinity of defendant's main or service line, under frozen ground and with no outlet through the vent in the cover of the curb box, would pass along the service line

and enter the basement through the basement drain at the northwest corner of the building.

Testimony presented by the defendant showed that a number of defendant's employees went to the scene of the explosion and attempted to locate the curb box to turn off the flow of gas into the burning dwelling. When the curb box was located the valve was found to be frozen and could not be turned. They then dug up the company service line and severed it with a hacksaw. This line was open for ten to fifteen minutes before the main could be plugged, and gas escaped from the opening with a blowing noise. The defendant's witnesses working at the scene said they could smell no gas until the line was severed. The local manager of the defendant, Floyd Mozingo, looked into the basement and saw gas burning with a red or orange flame out of the pipe leading from the gas meter.

The company service line was removed and tests made on it the day after the explosion showed it to be in good condition. A section of pipe leading from the gas meter to the house line, in the owner-maintained line, was removed by defendant's employees from the basement the day after the explosion and was found to display signs of a recent fracture.

It is the plaintiff's theory of the case that, as a result of defendant's negligence, the gas which caused the explosion came from a leak in the DeWitt street main or in the defendant's service line connecting the main to the curb box; that the leaking gas travelled underground in the trench in which the company's and owner's service lines were laid and entered the basement through the basement drain at the northwest corner of the building.

This theory was set forth in an instruction given by the trial court, at the instance of the plaintiff. This instruction, No. E, reads as follows:

"The Court instructs the jury that they shall find for the plaintiff in this action if they believe by a preponderance of the evidence that the death of Mrs. Irma P. Cloutier was caused by the entry of natural gas into the residence at 216 Florence Avenue, Waynesboro, Virginia, from a leak in the defendant's gas line or lines and that such leak resulted from the negligence of the defendant."

Plaintiff also contends that defendant negligently failed to inspect and maintain the curb box, and as a result the vented top became covered with dirt so that the leaking gas could not escape. In the view we take of the case it is not necessary to consider this contention.

The plaintiff, in sustaining his theory of the case, had the burden of proving by a preponderance of the evidence the primary fact that the gas which caused the explosion came from a leak in the defendant's facilities. We are of the opinion that the evidence is insufficient to support this primary fact.

We are not unmindful that the jury returned a verdict in plaintiff's favor in this case, and of the weight which is ordinarily accorded a jury's verdict. But that verdict has been set aside by the trial judge. A verdict which has been disapproved by the trial judge is not entitled to the same weight as one that has been approved by him. *Butler* v. *Darden*, 189 Va. 459, 471, 53 S. E. 2d 146; *Clark* v. *Parker*, 161 Va. 480, 486, 171 S. E. 600.

The authority to set aside a jury verdict and to enter final judgment is vested in a trial judge by the provisions of § 8-352, Code of Virginia, 1950. In discussing this authority, we said in *Clark* v. *Parker, supra*:

"The very fact that he is given the power to set aside a verdict as contrary to the evidence necessarily means that he must to some extent at least, pass upon the weight of the evidence. 'It would, indeed, be a futile thing for the law to give a court supervisory authority over the proceedings and manner of conducting a cause before a jury, and the right to set aside the verdict of the jury therein because contrary to the evidence, unless the judge vested with such power could consider to some extent at least, the evidence in the cause.' "

A jury's verdict must rest on facts proven, fair inferences therefrom or circumstances having a tendency to establish the necessary facts. *Bailey* v. *Fore*, 163 Va. 611, 177 S. E. 100. Was the jury's verdict in the case before us based on one of these foundations?

Plaintiff contends that the following facts are sufficient to prove the existence of a leak in defendant's lines:

The presence of gas near the Cloutier residence several hours before the explosion, as detected by Fuller.

The odor of gas at the scene, as detected by Berlin, Miller and Riddlebarger.

The hissing sound where the digging was taking place, as heard by Berlin.

The presence of dry soil around the company's service line, as observed by Miller.

The presence of the blue flame, as observed by Miller.

The mere presence of gas in the vicinity of the Cloutier residence is no proof of its source. It might well have come from some source over which the defendant had no control. For the plaintiff to contend that it was escaping through the ground into the air is to negate his own theory that it was passing along the service line into the basement drain.

The odor of gas detected by Berlin, Miller and Riddlebarger, after the explosion, might well have come from one of a number of sources. Miller indicated in his testimony that the service line may have been punctured by a pick in the digging operation, causing the line to leak. Berlin did not even know that the line had been severed by defendant's employees in an effort to stop the flow of gas into the house, and yet the uncontradicted evidence proves that it was so severed. The odor detected by these witnesses may have come from either the puncture or from the line where it was severed. The hissing noise heard by Berlin may have come from one of the same points.

The significance of the dry soil around the company's service line was not established in any way and cannot be considered of any probative value.

The presence of the blue flame is proof only of the presence of gas and not of the source of the gas itself. The existence of the blue flame is as consistent with a leak in the owner's facilities as it is with a leak in the defendant's facilities.

The evidence in this case, at its best, raises only the possibility that the gas which caused the explosion leaked from the defendant's lines. The proof of possibility only is never sufficient to sustain a verdict. *Hall* v. *Payne*, 189 Va. 140, 147, 52 S. E. 2d 76.

Under the evidence, it is just as likely that the leak occurred in the owner's lines as that it occurred in the defendant's lines. In this situation, plaintiff has failed to carry his burden of proof. Under these circumstances, the jury's verdict could only have been based on surmise and conjecture. Such a verdict must not be permitted to stand.

In his argument, plaintiff suggests that the doctrine of *res ipsa loquitur* should be applied in this case. This doctrine was not urged upon the trial court by the plaintiff in the instructions requested by him, and would appear to be raised for the first time before us. In any event, this is not a proper case for the application of the doctrine of *res ipsa loquitur* since all of the facilities from which the gas could

have leaked were not the exclusive responsibility of defendant. *Peters v. Lynchburg Light and Traction Company*, 108 Va. 333, 61 S. E. 745; *Laurent v. United Fuel Gas Co.*, 101 W. Va. 499, 133 S. E. 116.

The trial judge properly set the jury verdict aside and entered final judgment for the defendant, and his action in doing so is, accordingly,

*Affirmed.*