## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Safway Steel Products, Inc.

v.

U-Haul Co. and
W. Lennie Garrett, III

December 18, 1967

Case No. A-9829

By JUDGE A. CHRISTIAN COMPTON

Attached you will find a copy of the order entered today sustaining the motion to set aside the verdict in this case and entering final judgment for the defendants.

This is an action for damages to the plaintiff's Standard Hi-Lift Brick Buggy caused by the alleged negligence of the defendants who leased a trailer and its hitch to the plaintiff's agent, Hubbard. About two hours prior to the time of the accident, the defendant Garrett, acting as agent for the defendant U-Haul Co., installed a trailer hitch upon the rear bumper of Hubbard's Ford automobile. Although no transcript of the testimony is available, the Court's notes and recollection of the evidence indicate that Garrett installed the hitch on the bumper and attached a "5 by 9" trailer on the hitch in the presence of Hubbard; that, to Hubbard, the entire installation was done in a workmanlike manner; and that the hitch appeared to be securely fastened to the bumper. When called as an adverse witness the defendant Garrett testified that the hitch

and trailer were properly installed by him on Hubbard's vehicle.

Thereafter Hubbard drove ten miles to his office and by means of a fork lift loaded the buggy into the trailer from a loading dock which was higher than the trailer. The machine was 88 inches in height, 48.5 inches wide at its widest point and was 72 inches long. It weighed 1,112 pounds and carried a starter and battery weighing an additional twenty pounds.

The machine was placed in the trailer with "no jolt" and as gently as possible. Because the weight of the trailer and machine lowered the rear bumper of the car, more than was desired, the plaintiff's warehouse manager, Waddell, put three or four sandbags each weighing 75 to 100 pounds in the trailer toward the rear to partially compensate for the weight upon the front of the trailer. Waddell did not testify at the trial.

Hubbard secured the machine to the trailer in four places using 5/8 inch to 3/4 inch rope. At no time was the trailer removed from the hitch, according to Hubbard who remained with the trailer from the time it was installed by the defendant until the accident, except for a short time he spent in his office which he described as "a while." The tail gate was not removed to load the buggy and Hubbard did not examine the gate to see if it was "in the slots." The brakes on the buggy wheels were locked and the forks were in a lowered position   inch from the floor of the trailer.

Hubbard then drove a short distance from his office, where the loading operation took place, to Interstate 95. After driving two-tenths of a mile from the entrance ramp of the highway and while travelling 35 to 40 miles per hour on a slight downgrade, the rear end of the vehicle jerked and Hubbard saw the buggy 50 to 100 feet behind him in the highway completely demolished. Upon examining the hitch the left side of the hitch was completely off the rear bumper while the right side was still in place. The trailer was scratched on the left side of the rear fender and on the left side of the body. The guard rail on the left was bent. There was a "pucker" on the left rear bumper of the car at the place where the left side of the trailer hitch was attached. The rope was broken with one or two strands hanging on the trailer. The sandbags

were still in the trailer and the tail gate was still on it.

During a demonstration before the jury when Garrett installed an identical hitch on the car involved, he stated that if such a hitch was properly fastened to the car and sufficient force was exerted on it, the bumper would pull away from the car before the hitch would pull away from the bumper.

The Court allowed the case to go to the jury upon the doctrine of *res ipsa loquitur* and upon the plaintiff's view of that doctrine was embodied in instruction 5 and this was error. The defendants did not have the exclusive control and possession required in Virginia for the doctrine to apply under the facts of this case. *Stein* v. *Powell*, 203 Va. 423 (1962); *Cloutier* v. *Gas Corp.*, 202 Va. 646 (1961); *Jones* v. *Bush*, 202 Va. 752 (1961); *Smith* v. *Tatum*, 199 Va. 85 (1957); *Richmond* v. *Hood Rubber Products Co.*, 168 Va. 11 (1937); *Peters* v. *Lynchburg Light & Traction Co.*, 108 Va. 333 (1908). For a recent statement of the rule, see *Easterling* v. *Walton*, 208 Va. 214, 216 (1967).

The defendants had no contact with the trailer and hitch for over two hours before the accident. During this time the trailer had been driven ten miles, loaded with a machine which weighed over 1,000 pounds, loaded with sandbags weighing a total of 400 to 500 pounds, and had been driven at least two tenths of a mile more to the scene of the accident. The defendants did not load the machine in the trailer nor did they participate in the attempt to secure it therein by the use of ropes, sandbags and brakes. Hubbard stated that he did not know how the machine got out of the trailer into the roadway. The plaintiff argues that it was because the left side of the trailer hitch became detached from the bumper of the car. It is just as logical to infer that other factors connected with the loading process played a part in the ejection of the buggy. For example, the ropes may have broken allowing the buggy to break free and to leave the trailer through the tailgate. Any number of failures by the plaintiff's agents connected with the loading process, over which the defendants had no control, could have caused the damage or contributed to the damage.

The doctrine of *res ipsa loquitur* does not apply where on proof of the occurrence, without more, the matter

still rests on conjecture alone or the accident is just as reasonably attributable to other causes as to the negligence of the defendant. If the facts and circumstances of the occurrence tend to give rise to conflicting inferences, one leading to the conclusion of due care and the other to the conclusion of negligence, the doctrine does not apply. *Stein* case, *supra*, 203 Va. 426. That is certainly the case here.

Moreover, the doctrine does not apply in a case involving divided responsibility. *Peters* case, *supra*, 108 Va. 337. The defendant had the responsibility of securing the trailer and hitch and the plaintiff had the responsibility of the loading of the machine.

While citing no Virginia cases, the plaintiff urges that a more liberal view should be followed. Under such a rule the doctrine of *res ipsa loquitur* applies in a case where the instrumentality is not in the possession of the defendant at the time of the occurrence but the defendant had control of it at the time of the negligent act which caused the injury and it is shown that the instrumentality had not been improperly handled or its condition changed after it left the defendant's control or possession. 65 C.J.S., *Negligence*, Section 220.15(b), p. 574; Restatement of Torts, Second, Section 328C. See also 169 A.L.R. 953, 961. For an explanation of this view as taken by the Ohio Courts, see *Cusumano* v. *Pepsi-Cola Bottling Co.*, 223 N.E.2d 477 (1967). While there is no indication found by the writer in the cases that Virginia does not follow the strict interpretation of the rule, i.e., that "control" means actual physical possession of the instrumentality at the time the accident occurs nevertheless, here the plaintiff has not even brought itself under the so-called liberal rule because it has failed to show (for the reasons stated above) that "there is no probability that any other intervening force has had an effect on the instrumentality." 223 N.E.2d 480.