## Richmond

GEORGE GILMER, JR., IN HIS OWN RIGHT AND AS TRUSTEE, ET AL., ETC.
v. SOUTHERN RAILWAY COMPANY.

June 12, 1961.

Record No. 5237.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico JJ.

The opinion states the case.

*George Gilmer*, for the plaintiffs in error.

*H. Merrill Pasco* and *Roderick D. Sinclair* (*Thomas B. Gay*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Southern Railway Company, hereinafter called plaintiff, instituted an action against George Gilmer, Jr., M. E. Tremain, Betsy G. Tremain, and Decca G. Frackelton, in their own rights and as trustees, partners trading as Charlottesville Motor Co., hereinafter referred to as defendants. Plaintiff sought a judgment for damages to its radio tower caused by defendants' truck which had been parked on defendants' used car lot and later rolled into the tower. A jury verdict was returned in favor of plaintiff for $1,359.29, the amount sued for. Defendants' motion to set aside the verdict as being contrary to the law and the evidence and enter judgment in their behalf, or in the alternative grant a new trial because of misdirection of the jury was overruled. Judgment was entered on the verdict and defendants were granted a writ of error.

There is no material conflict in the evidence, and it may be summarized as follows: Defendants, doing business as Charlottesville Motor Co., were Ford dealers. The business was actively managed by two of the partners, Gilmer and Tremain. In connection with the agency located on the south side of West Main street in Charlottesville, they operated on the north side of the street, west of and adjacent to the Southern Railway, a lot for the sale of used cars and trucks. The number of such vehicles carried on the rented lot averaged about fifty and they were parked in "various manners." Defendants employed approximately sixty persons, seven of whom were salesmen and two who kept the vehicles clean. Only the salesmen, active partners and the clean-up men customarily went upon the lot which was not fenced or otherwise enclosed. On some days there were as many as twenty prospective purchasers who visited the lot.

According to Gilmer the lot was usually closed for business at 6 p.m. except on Fridays during the summer months when the closing hour was later. Each night the lights were turned off by 10 p.m.

Sometime after the closing hour on June 30, and before 7 a.m. on July 1, 1959, a large two and one-half ton Diamond-T tandem wheel truck, weighing eight to ten thousand pounds, parked on the lot facing west, rolled backwards into plaintiff's radio tower 103 feet in height which was located east of the lot. The impact badly bent

one of its three legs, causing the tower to lean in a westerly direction at a 30 to 45 degree angle, and plaintiff was required to replace the tower. The truck was not damaged.

Defendants had agreed to sell the truck and it had a "Sold" sign on it and had been parked in the same position on the lot about 50 feet west of the tower for "several days", long enough for the grass under the wheels to die. Defendants' employee, Charles O. Banks, testified that when he parked the truck he put it in the lowest of the eight forward gears and secured the hand brake. The lot had a 5 to 10 per cent grade sloping east toward the tower. The brake was the plunger type that could not be partly applied; it had to be entirely on or completely off. An inspection of the truck immediately after the acident revealed that it was in neutral gear, the brake was released and the battery was dead. The gears and brake were found to be in proper working condition.

Banks stated that he removed the keys from cars on the lot and locked them every afternoon about 5 o'clock. The following morning he would replace the keys and operate the motors for a short time. The truck was not locked because there were no keys to the cab. Likewise there were no keys to the ignition, and it could be turned on without a key. He further stated he did not inspect the truck after it was parked because it had been sold.

Gilmer testified that the normal practice for persons shopping for cars was to visit lots and look around, and that the public was welcome on their lot to look at the vehicles.

■ In their assignments of error defendants assert that the trial court erred in granting certain instructions, and in refusing to set aside the verdict since there was no negligence on their part which would entitle plaintiff to recover.

Instruction No. 3 reads:

"The Court instructs the jury that if you *believe from the evidence that the defendant failed to use reasonable care in parking its truck on terrain which sloped towards plaintiff's tower, with the rear of the truck aimed towards the tower, and such failure was a proximate cause of the accident,* you should find for the plaintiff in the amount sued for." (Italics supplied.)

The jury incorporated the italicized portion of the instruction in their verdict which clearly indicated the ground upon which they found for plaintiff.

Defendants argue here that the granting of Instruction No. 3

was erroneous because there was no evidence upon which to base it. In the trial court the only objection was to the phrase "in the amount sued for", and the only ground of objection given was "that the damages while not punitive have never been agreed upon." Thus we observe that defendants did not state to the trial court with reasonable certainty the ground of objection which they assert before us as required by Rule 1:8 of Rules of Court. Such being the case, we need not consider the ground relied upon here for the first time.

Plaintiff relied upon the doctrine of *res ipsa loquitur* in the court below and Instruction No. 6 embodying this principle was given over defendants' objection. Defendants contend that under the facts of this case the doctrine was not applicable and it was prejudicial error so to instruct the jury.

In 38 Am. Jur., Negligence, § 298, pp. 994, 995, the nature of the doctrine is discussed. There it is stated:

"The doctrine of res ipsa loquitur, which means, literally, the transaction speaks for itself, is merely a rule of evidence, not a substantive rule of law. On the other hand, it has been said that the doctrine, strictly speaking, merely takes the place of evidence as affecting the burden of proceeding with the case, and is not itself evidence. The doctrine is not a rule of pleading, but rather an inference aiding in the proof. It is peculiar to the law of negligence and is an exception to the general rule that negligence is not to be presumed, but must be affirmatively proved. The res ipsa loquitur rule has been said to be a qualification rather than an exception to the general rule of evidence that negligence must be affirmatively proved, in that it relates to the mode, rather than the burden, of establishing negligence. Res ipsa loquitur creates an inference or presumption of negligence that constitutes evidence of negligence which may not be disregarded by the jury, or court sitting without a jury, but is to be weighed and considered as against the evidence adduced by the defendant in rebuttal thereof. However, the doctrine does not require the jury to find in favor of the plaintiff, but merely affords evidence to carry the question of liability to the jury, which may adopt or reject the conclusion of responsibility on the defendant's part as required by their reason and common sense, applied to all the facts in the case."

In *Arnold* v. *Wood*, 173 Va. 18, 25, 3 S. E. 2d 374, we said:

"* * * [I]t is well settled in this State that this doctrine applies only in the absence of evidence and when the cause of the accident is not

explained. It does not apply where, as in the instant case, there is evidence explaining the cause of the accident. *Richmond* v. *Hood Rubber Products Co.*, 168 Va. 11, 16, 17, 190 S. E. 95; *Norfolk Coca-Cola Bottling Works, Inc.* v. *Krausse*, 162 Va. 107, 115, 173 S. E. 497; *Riggsby* v. *Tritton*, 143 Va. 903, 912, 129 S. E. 493, 45 A. L. R. 280.

"* * * The doctrine rests upon the assumption that the thing which causes the injury is under the exclusive management and control of the defendant, and that the accident is such as in the ordinary course of events does not happen without fault on the part of the defendant. *Duke* v. *Luck*, 150 Va. 406, 412, 143 S. E. 692. But the doctrine does not apply in the case of an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible. *Peters* v. *Lynchburg Light & Traction Co.*, 108 Va. 333, 337, 61 S. E. 745, 22 L. R. A. (N. S.) 1188; *Riggsby* v. *Tritton, supra* (143 Va. 903, at pages 914, 915, 129 S. E. 493, 45 A. L. R. 280)."

For a further discussion of the doctrine of *res ipsa loquitur*, see *Riggsby* v. *Tritton*, 143 Va. 903, 129 S. E. 493, and 38 Am. Jur., Negligence, § 295 *et seq.*

In the case at bar the record discloses there was some explanation offered concerning the cause of the accident. The uncontradicted evidence was that Banks, defendants' employee, secured the plunger type hand brake on the truck, which had to be entirely on or completely off; that the truck was in the lowest of its eight gears; that it had remained on the unfenced lot in the position it was parked "several days" prior to the accident which happened during a time the lot was closed for business, and that when the truck was inspected after the impact the brake was released and the motor was in neutral gear; both were mechanically in good working condition. While there was no positive evidence introduced that a trespasser or a third person came upon the lot and caused the truck to roll into plaintiff's tower, the jury could have reasonably inferred from the evidence that the truck had been tampered with by some one other than defendants or their employees. In fact, Instruction No. 4 told the jury that if they believed from the evidence such to be the case they should find for defendants. The vehicle was not under defendants' exclusive control at the time the accident occurred. Assuming there was no explanation offered as to the cause of the accident it could have been attributable to causes for which the defendants were not responsible. We hold

that under the evidence adduced the doctrine of *res ipsa loquitur* was not applicable, and that the granting of Instruction No. 6 constituted error.

We turn next to a consideration of Instruction No. 7. It reads in part:

"The Court instructs the jury that if you believe from the evidence that the defendant's truck ran off its parking site into the plaintiff's tower, these facts raise a *prima facie* presumption that defendant failed to use reasonable care. * * *"

Since we hold that the doctrine of *res ipsa loquitur* was not applicable, the plaintiff was not entitled to an instruction which told the jury that the evidence raised a *prima facie* presumption that defendants failed to use reasonable care.

Instruction No. 6 which told the jury they "may infer that the accident was due to the lack of reasonable care of the defendant", and Instruction No. 7 which stated that if the jury believed that defendants' truck ran off the parking lot into plaintiff's tower, "these facts raise a *prima facie* presumption that defendants failed to use reasonable care", gave plaintiff an advantage it was not entitled to and could have readily influenced the jury in arriving at their verdict for plaintiff which was based on Instruction No. 3.

For the reasons stated, the judgment appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*