## Richmond

JUANITA K. SURFACE, ADMINISTRATRIX, ETC. v.
PEGGY S. JOHNSON, ADMINISTRATRIX, ETC.

April 28, 1975.

Record No. 740507.

Present, All the Justices.

*John H. Kennett, Jr.,* for plaintiff in error.

*B. K. Cruey (Arthur E. Smith,* on brief), for defendant in error.

Harman, J., delivered the opinion of the court.

This is an action brought under the wrongful death statute, Code § 8-633, by Juanita K. Surface, Administratrix of the Estate of Sandra Jane Surface, deceased (plaintiff), against Peggy S. Johnson, Administratrix of the Estate of J. Fred Johnson, deceased (defendant). At the conclusion of the plaintiff's evidence-in-chief, the trial court sustained the

defendant's motion to strike the plaintiff's evidence. We granted a writ of error to review this ruling.

■ In these circumstances, the plaintiff is entitled to have the evidence, and all reasonable inferences therefrom, viewed in the light most favorable to her, as upon a demurrer to the evidence. *Gray* v. *Van Zaig*, 185 Va. 7, 37 S.E.2d 751 (1946).

Shortly after 10:00 p.m. on May 27, 1971, a single-engine Cessna Cardinal Aircraft owned and piloted by J. Fred Johnson (Johnson), which was traveling in a northwesterly direction, crashed, nose first at a sharp angle of inclination, near New Castle in mountainous Craig County, Virginia. All four persons aboard were killed. The occupants of the plane, other than Johnson, were his wife, Carolyn Hundley Johnson, Riley Muriel Thompson (Thompson) and Sandra Jane Surface (Surface). The fatal flight had originated at Woodrum Field in Roanoke, Virginia, approximately 30 minutes before the crash. Although no flight plan had been filed by Johnson with the Federal Aviation Administration (FAA), circumstances indicate that the intended destination of the flight was Beckley, West Virginia.

The record shows that Johnson was licensed as a "student" pilot. Under FAA regulations he was not permitted to transport passengers while flying an aircraft, nor was he permitted to travel solo "cross-country," even in daylight, without the prior endorsement and approval of his instructor. He was qualified only to fly "visual flight rules" and was neither licensed, qualified nor trained for "blind" flight by the use of instruments.

Richard Perdue (Perdue), an FAA licensed instructor, testified that he had been teaching Johnson to fly during the four or five months preceding the crash. Johnson had received a total of 16 hours of instruction and had successfully soloed his aircraft. With Perdue's approval, Johnson had successfully completed solo "cross-country" flights in daylight prior to his death. However, Johnson was not permitted to fly solo "cross-country" at night.

Perdue received a telephone call from Johnson at 3:30 p.m. on August 27. Perdue agreed to fly Thompson, who was Johnson's employee, to Beckley, West Virginia, in Johnson's plane at 5:00 p.m. Later, around 4:30 p.m., Johnson again called Perdue and requested that the flight be postponed until 9:00 p.m. Perdue, aware that weather conditions were deteriorating over the

mountainous area which the flight would traverse, declined to agree to the suggested change. While assigning a social engagement as one reason for his reluctance to make the later flight, Perdue, who knew that adverse weather and flying conditions had prevailed over the proposed route for several nights, testified that he observed "a lot of cumulous buildup, the thunderstorm type clouds were prevailing and having thousands of hours in mountain flying I — something like twenty-five hundred at the time, I felt like I knew the weather well enough that I wouldn't take the flight myself that late, from my experience." Perdue suggested, and Johnson appeared to agree, that Thompson should travel from Roanoke to Beckley that night on a scheduled airline flight.

E. G. Moses, a Virginia State Trooper for 17 years, was the first person to arrive at the crash scene. He testified that he arrived at the site, a short distance from his home, approximately 15 minutes after the crash. He said it was "real dark . . . so dark there was no horizon. You could not see a visible horizon." At the time he arrived at the scene a "summer electric storm" was approaching from the west. "There was no fog, but . . . heavy black clouds in the sky. You could not see any stars. It was real dark, and lightning was flashing in the west. It would light up the sky every ten or fifteen seconds — would light up the whole area. It was a real dreadful time."

Richard A. Dollman, an aviation inspector for the FAA, was sent to the crash scene on May 28, for the purpose of conducting an investigation of the crash. He testified that his investigation disclosed that weather conditions at the time of the crash were "stinko . . . just bad" and that with "weather conditions at the time . . . it would be pretty hard for an accomplished pilot to take the flight, let alone in that particular aircraft." His testimony indicates that it would have been dangerous for even a qualified pilot to fly Johnson's plane cross-country at night under weather conditions which prevailed along the route of the flight on the night of May 27.

■ The plaintiff argues that we should apply the doctrine of *res ipsa loquitur* under the facts disclosed by the evidence here. Because the crash occurred, she would have us infer negligence on the part of Johnson, and then infer that his negligence was a proximate cause of the crash. We decline to draw such inferences from the mere happening of the crash, for it is a matter of

common knowledge that an aircraft may fall or crash in the absence of negligence or fault on the part of its pilot.

■ Plaintiff's counsel concedes that the "precise reason" for the crash is not established by the plaintiff's evidence. He argues, however, that the evidence that Johnson, an inexperienced student pilot, undertook a night flight, with other persons aboard his aircraft, under extremely adverse weather conditions, over rugged mountainous terrain, coupled with the other evidence, was sufficient to create a jury issue as to whether Johnson's negligence in undertaking the flight was a proximate cause of the crash. We agree.

Code § 5.1-13 makes it a misdemeanor for any person to operate an aircraft within the Commonwealth ". . . carelessly or heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and in a manner so as to endanger any person . . . ." Likewise, Code § 5.1-15 makes it a misdemeanor for any person to operate any civil aircraft within the Commonwealth ". . . without being, at the time of such operation, in possession of a valid airman's certificate for such operation . . . ."

■ The gross negligence rule, applicable to guests in an automobile prior to the amendment of Code § 8-646.1 in 1974, does not extend to guests traveling by aircraft. *Walthew* v. *Davis, Adm'r*, 201 Va. 557, 111 S.E.2d 784 (1960).

Viewing the evidence in the light most favorable to plaintiff, it is clear that Johnson was negligent in even undertaking the flight in question. In so doing, Johnson was not only guilty of simple negligence, but, if the evidence of Perdue and Dollman is accepted, he was guilty of culpable and wanton negligence in undertaking a night flight far beyond the level of his experience and training over mountainous terrain in extremely bad weather. He knowingly undertook the same flight that Perdue, a far more qualified and experienced pilot, had declined to undertake in Johnson's plane because of existing conditions. He undertook a flight which Dollman, who was also an experienced and qualified pilot, said would be, under then existing conditions, difficult for an "accomplished pilot" in a more sophisticated aircraft and dangerous, even for a qualified pilot, in Johnson's aircraft.

Viewing the evidence in this perspective, we hold that a jury question on the issue of negligence and proximate cause was

created and that the trial court erred in striking the plaintiff's evidence.

*Hall* v. *Payne*, 189 Va. 140, 52 S.E.2d 76 (1949), which is heavily relied upon by the defendant, is inapposite because of its factual differences from the case at bar. There, where a plane operated by a qualified pilot crashed in daylight, even the pilot's negligence was left to conjecture.

For these reasons, the judgment below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

Harrison, J., dissenting.

This is a case of an inexperienced pilot who had an accident while flying his aircraft in inclement weather. Assuming the pilot's negligence in attempting the flight under these conditions, there is no evidence that his lack of expertise or the condition of the weather was the proximate cause of the crash. The burden was on the plaintiff to show how and why the accident happened — its proximate cause — and this she failed to do. The only thing established by the evidence is that the aircraft was owned and piloted by defendant's intestate, a student pilot, and that it crashed while flying in bad weather, resulting in the death of all its occupants.

Regretfully, for this was a tragic accident, I am unable to agree that the evidence is sufficient to create a jury question on the issue of proximate cause.

I would affirm the action of the lower court.

I'Anson, C.J., joins in dissent.