## Richmond

HORACE E. MACKEY AND FRANCES N. MACKEY

v.

JOHN D. MILLER

January 16, 1981.

Record No. 790073.

Present: All the Justices.

*Robert E. Gillette* for appellants.
*John C. Howell* (*Willcox, Savage, Lawrence, Dickson & Spindle, P.C.*, on brief), for appellee.

I'ANSON, C. J., delivered the opinion of the Court.

This appeal concerns a midair collision of an airplane owned and operated by John D. Miller, the defendant, with an aircraft operated by Horace E. Mackey and owned by Mackey and his wife, Frances N. Mackey. Sitting without a jury, the trial court heard evidence, determined both pilots were guilty of negligence, and entered judgments for Miller in actions brought by the Mackeys for property damage to their aircraft and by Horace Mackey for personal injuries sustained in the midair collision. The dispositive issue in this appeal is whether Horace Mackey was guilty of contributory negligence and hence barred, along with his wife,[1] from recovering damages arising out of the accident.

On April 30, 1977, while Horace Mackey was preparing to fly the Mackeys' Cessna aircraft from their private airstrip in Suffolk to a friend's private airstrip in Isle of Wight County, John Miller landed his

---

[1] The trial court imputed Horace Mackey's alleged negligence to his wife and thus barred her from recovering property damages. Our holding makes it unnecessary to resolve whether the trial court's imputation of negligence was proper.

Piper Pacer plane at the Mackey airstrip. Upon learning of Mackey's destination, Miller asked if he could accompany Mackey in his own plane. Because Miller had not flown from the Mackey airstrip to the friend's airstrip, the two pilots agreed that Miller would follow Mackey. Since the position of his aircraft on the airstrip precluded Mackey from departing first, Miller left the airstrip before Mackey, making two left turns so that he was flying parallel to the airstrip.

The Mackey airstrip runs in an east-west direction. The destination to which Mackey and Miller were traveling was north of the airstrip. At the time of departure, approximately 11:30 a.m., flying conditions were excellent. The sky was clear, and visibility exceeded 15 miles.

When taking off from the airstrip, Mackey saw Miller's plane traveling to his left and heading in the opposite direction. After becoming airborne, Mackey made a left turn, began a steady climb, and maintained a constant northerly course until the collision. After losing visual contact with Miller following take-off, Mackey twice radioed Miller to ascertain Miller's location. Although Miller reported he was behind Mackey in the 8 o'clock position (slightly to the left of Mackey), Mackey was unable to establish visual contact after looking to the left and the right and through the small window behind the pilot's seat. Approximately five minutes after both planes had been airborne, and very shortly after the second radio contact, the planes collided in midair. After the collision, both pilots managed to land their planes safely.

Miller testified that after Mackey's plane achieved flight, he positioned his aircraft, traveling 95 to 100 miles per hour, so that it was 100 to 150 feet below and 100 to 150 feet behind Mackey's plane. For a split second, Miller looked at his instrument panel. When he attempted to reestablish visual contact with Mackey, he was unable to do so. Without deviating from his course, Miller raised his airplane's right wing in the hope that he could see Mackey. When he raised his wing further, the two airplanes collided. Miller acknowledged that he and Mackey never discussed how closely he would follow Mackey, that he never told Mackey prior to the collision how closely he was following Mackey, and that he "could have been in Norfolk and kept [Mackey] in sight."

Miller and the Mackeys introduced into evidence several photographs depicting the damage to both aircraft. In addition, an expert witness who surveyed the damage to the aircraft provided a description of the damage to both planes. The pictures and testimony reveal that the Miller airplane's left wing hit the bottom and side of the Mackey aircraft's fuselage and that the Miller airplane's spinner (the nose of

the propeller) struck the center of the Mackey airplane's right aileron (the movable part of the aircraft wing located at the trailing edge of the wing). On the basis of the physical damage to both aircraft, the expert witness concluded both airplanes were climbing at the time of the collision.

■ In our prior decisions concerning questions of tort liability arising out of the operation of aircraft, we have applied ordinary rules of negligence and due care. *See, e.g., Surface, Adm'x* v. *Johnson, Adm'x,* 215 Va. 777, 780, 214 S.E.2d 152, 154-55 (1975); *Walthew* v. *Davis, Adm'r,* 201 Va. 557, 562, 111 S.E.2d 784, 786-87 (1960); *Cape Chas. Flying Ser.* v. *Nottingham,* 187 Va. 444, 449, 47 S.E.2d 540, 542 (1948). Other courts have done likewise. *See, e.g., Dickens* v. *United States,* 545 F.2d 886, 892 (5th Cir. 1977); *Todd* v. *Weikle,* 36 Md. App. 663, 376 A.2d 104 (1977). These ordinary rules of negligence govern this appeal. Each pilot owed to the other a duty to use ordinary care in the operation of his aircraft.

■ The evidence presented to the trial court clearly supports the trial court's conclusion that Miller was negligent in the operation of his aircraft. Although acknowledging he could have visually followed Mackey from several miles away, Miller positioned his airplane approximately 100 to 150 feet from Mackey's aircraft in violation of a safety rule promulgated by the Federal Aviation Administration.[2] Knowing that Mackey had not seen his plane, Miller nevertheless did not reveal to Mackey that he was only 100 to 150 feet away. After diverting his eyes to his instrument panel, Miller lost visual contact and raised his airplane wing in an attempt to reestablish visual contact. Miller's actions in operating his aircraft so close to Mackey's air-

---

[2] 14 Code of Federal Regulations (CFR) § 91.65, entitled "Operating near other Aircraft," provides in subsection (a) that "[n]o person may operate an aircraft so close to another aircraft as to create a collision hazard."

The litigants and trial court relied upon 14 CFR § 91.79, which is entitled "Minimum safe altitudes; general." Subsection (c) provides that over water or sparsely populated areas, aircraft "may not be operated closer than 500 feet to any person, vessel, vehicle, or structure." In light of 14 CFR § 91.65, 14 CFR § 91.79 appears to be designed to govern proximity to persons, vessels, vehicles, or structures on the ground or water only.

Several courts have held that, under certain circumstances, the violation of a federal aviation regulation is negligence *per se. See, e.g., Freeman* v. *United States,* 509 F.2d 626, 630 (6th Cir. 1975); *Farnsworth* v. *Steiner,* 601 P.2d 266, 271 (Alas. 1979). *Cf. Beasley* v. *Bosschermuller,* 206 Va. 360, 365, 143 S.E.2d 881, 886 (1965) (violation of a statute is negligence *per se*). See also Code § 5.1-13, which makes it a misdemeanor for a pilot to operate his aircraft "without due caution and circumspection and in a manner so as to endanger any person or property."

craft and in failing to alert Mackey as to his proximity clearly support the trial court's conclusion that Miller was negligent.

We have been unable, however, to find any evidence supporting the trial court's conclusion that Horace Mackey was guilty of contributory negligence. Nothing in the record suggests either that Mackey altered the course of his aircraft once in flight or that he failed to keep an adequate lookout. No evidence indicated Mackey knew or had reason to know that Miller had positioned his plane only 100 to 150 feet from Mackey's aircraft. The position of Miller's airplane behind and below Mackey's aircraft made it impossible for Mackey to see Miller's plane.

A pilot's duty to maintain an adequate lookout for other airplanes is directly related to the pilot's ability to see the other aircraft. *Allegheny Airlines, Inc.* v. *United States,* 504 F.2d 104, 109 (6th Cir. 1974), *cert. denied,* 421 U.S. 978 (1975). A pilot of one airplane does not breach his duty to maintain an adequate lookout for another airplane when, notwithstanding his exercise of ordinary vigilance, the relative positions, elevations, or courses of the two planes make it impossible for him to see the other plane. *Bibler* v. *Young,* 492 F.2d 1351, 1361 (6th Cir.), *cert. denied,* 419 U.S. 996 (1974); *Allen* v. *United States,* 370 F. Supp. 992, 1003-04 (E.D. Mo. 1973). Since the evidence reveals that Mackey could not have seen Miller's plane because of its location behind and below Mackey, Mackey did not breach his duty to maintain an adequate lookout.

The trial court concluded that Mackey was guilty of contributory negligence in failing to reach an understanding with Miller concerning details of the flying arrangement, notably the distance to separate the airplanes during the trip. Mackey, however, was under no duty to reach such an understanding with Miller. A pilot has a right to assume that another pilot will obey air traffic regulations until he realizes, or in the exercise of ordinary care should have realized, that the other pilot is not going to do so. *Allegheny Airlines,* 504 F.2d at 111; *Baker* v. *United States,* 417 F. Supp. 471, 486 (W.D. Wash. 1975). Mackey had the right to assume that Miller would maintain as much distance between the airplanes as would be necessary to avoid creating a collision hazard, 14 CFR § 91.65(a), until he had reason to know Miller was not doing so.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for a determination of the Mackeys' damages.

*Reversed and remanded.*