## CIRCUIT COURT OF THE CITY OF RICHMOND

Nathaniel Cosby

v.

Shen Valley Meat Packers, Inc.

October 14, 1986

Case No. LH-1758

By JUDGE ALEX H. SANDS, JR.

This case comes before the court upon defendant's motion to set aside the jury verdict of $130,000 rendered in favor of plaintiff on May 13, 1986. This motion is premised upon the following three grounds:

1. That the court erred in overruling defendant's motion to strike plaintiff's evidence made at the conclusion of plaintiff's evidence and renewed at the conclusion of all of the evidence.

2. That the court erred in refusing to grant instruction "J" offered by defendant embodying the "one of two causes" doctrine and in refusing to permit defendant to argue the "one of two causes" concept to the jury.

3. That the verdict was excessive.

These grounds will be addressed conversely from the order in which listed above.

### 3. *Was the Verdict Excessive?*

While the verdict rendered in this case was, in the opinion of the court, excessive, it is the unquestioned rule in this jurisdiction that the court cannot substitute its judgment for that of the jury. *National Cab Co.* v. *Thompson*, 208 Va. 731 (1968). (See also the pilot case

of *Rawle* v. *McIlhenny*, 163 Va. 735 (1934), setting forth in detail the rules controlling the court upon a motion of this nature.)

The court does not feel from a review of the evidence in this case that the verdict was influenced by passion, corruption or prejudice or that the verdict was the result of a misconception of the facts or a misunderstanding of the law, nor does the size of the verdict shock the conscience of the court.

The court, therefore, rejects excessiveness as a tenable ground for setting aside the verdict.

### 2. *The Court's Refusal to Grant Instruction "J".*

Whether or not the court committed error in refusing to grant instruction "J" offered by defendant becomes a moot issue in view of the court's ruling upon ground 1, which will now be addressed.

> 1. *Did the court err in overruling defendant's motion to strike plaintiff's evidence and to enter judgment in defendant's favor made when plaintiff rested and renewed at the conclusion of all of the evidence?*

There is no legal concept more firmly entrenched in Virginia jurisprudence than that negligence cannot be presumed from the mere happening of an accident and that there must be evidence to support a charge by plaintiff that defendant was negligent and that such negligence was a proximate cause of the accident causing the injury complained of.

The plaintiff is required to show "why" and "how" the accident occurred causing plaintiff's injuries. *Sneed* v. *Sneed*, 219 Va. 15 (1978).

The testimony of only three witnesses was offered by plaintiff to establish the "how" and "why" of the accident, i.e. (1) the plaintiff, (2) Summers, the driver of defendant's rig, who is deceased and whose testimony at a previous trial of this case when he was called as an adverse witness by plaintiff was read into evidence, and (3) Dennis Lee Ward, a brake mechanic.

The testimony of the only two eye witnesses, the plaintiff and Summers, establishes conclusively that the "how" of the accident was the tractor-trailer's rolling

down the incline upon which it had been parked and striking the State Penitentiary Warehouse.

Whether plaintiff has borne his burden of establishing the "why" of the accident is the issue before the court.

### Evidence Considered

The *uncontradicted* evidence disclosed by the record is as follows: (1) All braking equipment on both tractor and trailer were in good mechanical condition and functioning properly both before and after the accident; (2) both buttons which controlled the brakes on the tractor and on the trailer were found to be in the "off" position when examined immediately after the accident; (3) upon arrival, the tractor-trailer was parked approximately twenty to twenty-five feet from the warehouse upon a road sloping down to the warehouse, the incline or grade of which, while not testified to in degrees, was steep enough to cause the cab door to swing shut of its own volition when the driver, Summers, exited from the cab; (4) the grade was sufficient to have caused the rig to begin rolling backwards immediately if the brakes were released; (5) approximately fifteen minutes had elapsed from the time the driver, Summers, left the cab until the rig began coasting backwards; (6) the motor was running at all times from the moment of arrival until the rig struck the warehouse; (7) as the rig began rolling backwards some person (unidentified) yelled that the tractor-trailer was moving down the incline; (8) Summers had visited the same location and parked in substantially the same manner some seventy-five times previously to the day of the accident and had never experienced any trouble on any other occasion with his rig's drifting backwards; (9) Summers did not chock the brake wheels and did not carry chocks in his rig.

On three separate occasions, Summers testified positively that upon the day of the accident he had put all brakes on the rig in the "on" position prior to his getting out of the cab. He further testified that had the brakes not been on at the time he got out of the cab, the rig, because of the steep grade, would have begun rolling backwards before he could exit from the cab. That the rig would have begun rolling backwards immediately upon release of the brakes was corroborated by plaintiff's witness Ward (the brake expert) though he said the grade,

any shifting of the load and any movement in the truck would be factors to be considered in determining the rig's backward movement.

### Plaintiff's Position Considered

Plaintiff contends that having proved that the braking equipment was found to be in the "off" position immediately after the accident and that it was in good operating condition both before and after the accident, the jury could have inferred from this that the driver, Summers, had failed to set the brakes in the "on" position before leaving the cab, Summers's testimony to the contrary notwithstanding, and that the jury could find, based on such inference, that this was the cause (the "why") of the accident.

The difficulty with this argument is that it overlooks the fact that the *uncontradicted* testimony of plaintiff's witnesses Summers and Ward was that the tractor-trailer would have rolled backwards *immediately* upon the brakes being in an "off" position.

During the fifteen-minute interval between the time when Summers left the cab and the time when the rig began rolling backwards down the incline, *something* happened to cause the rig, which up until that moment was stationary, to begin its downward movement. This "something" is the "why" of the case and the burden was upon the plaintiff to produce evidence from which it could be determined what the "something" was.

### Authority

It appears to the court that *Spurlin, Adm'x. v. Richardson*, 203 Va. 984 (1962), is very much in point, the identical situation of failure to produce evidence explaining the cause of the sudden rolling movement of the vehicle being the sole issue. The Supreme Court of Virginia, in affirming the trial court's action in striking plaintiff's evidence stated:

> A verdict in favor of the plaintiff could not have been upheld under the evidence *because it would have been based on speculation or guess as to what caused the tractor to move from its parked position.* (Italics added.)

Plaintiff contends that because there is no evidence of any third person's having been actually seen tampering with the rig during the critical fifteen-minute interval here involved, such possibility could not be considered. In *Gilmer* v. *Railway Co.*, 202 Va. 826 (1961), where the same contention was raised, the Supreme Court resolved the question thus:

> While there was no positive evidence introduced that a trespasser or third person came upon the lot and caused the truck to roll into plaintiff's tower, the jury could have reasonably inferred from the evidence that the truck had been tampered with by someone other than defendants or their employees.

Finally, plaintiff contends that since Summers admitted he did not apply chocks under the rear wheels of the tractor-trailer when parked on the incline, this admission alone, independently of any other evidence, would support a finding by the jury that this was negligence which was the proximate cause of the accident.

The unrebutted testimony of Summers was that he had parked upon the same incline some seventy-five times in the past in the same manner and had never, on any prior occasion, experienced any problem with his rig's rolling down the incline or the brakes not holding.

The uncontradicted testimony, moreover, was that after the accident the tractor-trailer was placed in the same position on the incline with the brakes "on" and that the rig did not move.

In view of this unrebutted testimony, the case at bar falls squarely (insofar as plaintiff's contention of the failure to supply chocks is concerned) within this holding of the Supreme Court of Virginia in *Spurlin*, *supra*:

> While it is true that the front wheels of the tractor were on a slight downgrade, it remained in its parked position with its wheels locked for more than two hours before moving. Hence, it was neither foreseeable nor reasonably anticipated by the defendants that the brakes would not hold in its parked position. . . . The

defendants were not required in the exercise of ordinary care to take extraordinary precautions by scotching the wheels. . . .

A verdict in favor of the plaintiff could not have been upheld under the evidence *because it would have been based on speculation or guess as to what caused the tractor to move from its parked position.* (Italics added.)

Because of the nature of the case, plaintiff was forced to establish vital parts of his case by relying upon the testimony of defendant's driver, Summers, called as an adverse witness and was, of course, bound by so much of his testimony as was not contradicted by other credible evidence, of which none appears to exist in this case.

Accepting as we must, based upon uncontradicted evidence, that the tractor-trailer could not have moved with the brakes on and that it would have begun to move downhill immediately upon release of the brakes, and that a fifteen-minute interval of time elapsed between the time defendant's driver, Summers, vacated the cab and the time at which the tractor-trailer began rolling backwards, we are driven to two inescapable conclusions: (1) that the brakes had to have been in the "on" position at the time Summers left the cab and (2) that some happening, unexplained by the evidence, occurred which released the brakes at the end of this fifteen-minute interval when the tractor-trailer began rolling backwards.

For the above reasons, the court erred in refusing to grant defendant's motion to set aside the verdict and to enter judgment for defendant made at the time plaintiff rested and renewed upon completion of all of the evidence.

The verdict will, accordingly, be set aside and final judgment entered for the defendant.